**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| **J.T.** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 19-989** |
| ) | **(BAH)** |
| **DISTRICT OF COLUMBIA** ) | |
| **Defendant.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

In accordance with 20 U.S.C. § 1415(i)(3)(B) and its implementing regulations, the

Plaintiff respectfully moves that this Court grant her summary judgment and award her

reasonable attorneys' fees and costs incurred in this case and the underlying administrative

litigation in the amount of $198,516.70, plus any additional costs and expenses of this action, to

be determined.[1]

In support, the Plaintiff submits the attached memorandum.

The Defendant did not respond to a request for consent to this Motion.

Respectfully submitted,

/s/ Douglas Tyrka____
Douglas Tyrka, #467500
Tyrka & Associates, LLC
7322 Churchill Rd.
McLean, VA  22101
(ph) (202) 332-0038
(f) (202) 332-0039
tyrka@tyrkalaw.com

---

[1] The Plaintiff has already included the work to date on the fees dispute in the itemization.

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| | ) |
| **J.T.** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 19-989** |
| | ) **(BAH)** |
| **DISTRICT OF COLUMBIA** | ) |
| **Defendant.** | ) |
| | ) |

_____

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

### BACKGROUND AND INTRODUCTION

The Plaintiff is the mother of a child with special needs who successfully litigated a case brought against the District of Columbia Public Schools ("DCPS") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*., obtaining first an administrative order for partial relief and then an order from this court awarding the remainder of the relief.[2] She now seeks attorneys' fees and costs under the fee-shifting provision of the IDEA.

Specifically, she requests $198,516.70 in reimbursement, in accordance with the attorney's customary rates, which match inflation-adjusted "*Laffey* matrix" rates.

### LEGAL FRAMEWORK

In litigation under the IDEA, prevailing parties may obtain reasonable attorneys' fees and costs. 20 U.S.C. § 1415(i)(3)(B). The award of reasonable attorneys' fees under the IDEA is a

---

[2] In this case, the Plaintiff challenged three administrative decisions, but prevailed regarding only one of them. She seeks fees only related to that one successful case. Her work itemization includes two classes of work: 1) work on only the successful claims, for example work on the one successful underlying administrative case and work on enforcement; and 2) work on the three claims together, which work the Plaintiff has cut to one-third, as noted on the itemization. *See* Exhibit 1.

2

matter of judicial discretion. *See id*. (authorizing the court to award attorneys' fees "in its discretion").

To obtain fees and costs, a party must establish that it is a "prevailing party," that is, "one who has been awarded some relief by the court." *Buckhannon Bd. and Care Home v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001).

Courts employ the lodestar method to determine fees under the IDEA, as they do under other fee-shifting statutes. *See Eley v. D.C.*, 793 F.3d 97, 100 (D.C. Cir. 2015). To determine the reasonable fees to grant to a prevailing party, a court must determine: 1) "the number of hours reasonably expanded in litigation;" 2) the "reasonable hourly rate or 'lodestar';" and 3) any "multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (*en banc*) (*"SOCM"*).

The moving party must submit supporting documentation with the motion for attorneys' fees, providing sufficient detail so that the Court can determine that the hours billed were reasonably expended, that the hourly rate charged was reasonable, and that the matter was appropriately staffed to do the work required efficiently. *In re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989). The party must provide some information about the attorneys' billing practices and hourly rate, the attorneys' skill and experience (including the number of years that counsel has practiced law), the nature of counsel's practice as it relates to this kind of litigation, and the prevailing market rates in the relevant community. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996).

"In order to demonstrate [prevailing community rates], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community," as well as "affidavits reciting the

precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Covington*, 57 F.3d at 1109.

Once the moving party has provided its supporting information, the number of hours and the rates are presumed reasonable, and the burden shifts to the non-moving party to rebut the moving party's showing. "[I]n the normal case the [non-moving party] must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109-10.

Finally, the overriding principle is that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

## ARGUMENT

## I.       THE PLAINTIFF IS A PREVAILING PARTY

Through the administrative decision, J.T. obtained relief as required by *Buckhannon*, a "material alteration of the legal relationship of the parties." 532 U.S. at 603-604; *see* AR 3-13; ECF 42-43.[3] Specifically, J.T. obtained orders directing DCPS to determine appropriate compensatory education for its failure to appropriately educate her son for an entire year. *See id.* Since the issuance of those orders, both compensatory education evaluations have been completed, and the instruction and services are underway.

---

[3] *See* footnote 2 regarding the reduction of times due to unsuccessful claims.

II.     **THE PLAINTIFF HAS FULLY DOCUMENTED HER ATTORNEY'S FEES AND COSTS**

The Plaintiff has attached hereto a detailed itemization of tasks performed, hours expended, and rates charged in this case.[4] Exhibit 1. She has also attached hereto a verified statement from her attorney that provides information regarding the attorney's billing practices, his skill and experience, and the nature of his practice. Exhibit 2. The verified statement also details billing restraint and billing judgment applied to the itemization. *See id*.

III.    **THE HOURS ITEMIZED ARE REASONABLE**

Upon determining that the Plaintiff is a prevailing party, the Court must determine "the number of hours reasonably expended in litigation." *SOCM*, 857 F.2d at 1517.

A review of the itemized tasks reveals that the hours claimed are reasonable. *See* Exhibit 1. As a specialist in this field, the Plaintiff's attorney was able to work efficiently. *See id.*

Additionally, as the statement describes and the itemization exhibits, the Plaintiff's attorney exercised billing judgment so as to eliminate excessive, redundant, or otherwise unnecessary hours. *See* Exhibits 1-2.

IV.     **THE PLAINTIFF'S REQUESTED RATES ARE REASONABLE**

Upon determining that the Plaintiff is a prevailing party and determining the hours reasonably expended, the Court need determine, from the documentation provided, "the reasonable hourly rate or 'lodestar.'" *SOCM*, 857 F.2d at 1517. More specifically, the rates must reflect those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see* 20 U.S.C. § 1415(i)(3)(C) (IDEA fee awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services

---

[4] *See* footnote 2 regarding the reduction of times due to unsuccessful claims.

furnished."). As evidenced by the several affidavits attached, the Plaintiff's requested rates reflect the prevailing rates.

> **A.      IDEA Lawyers Earn the Rates Requested on the Market.**

Plaintiffs in fee cases may rely on "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases." *Covington* 57 F.3d at 1109. The Plaintiff has presented the declarations of lawyers, including Plaintiff's counsel, attesting to their ability to negotiate and earn LSI *Laffey* rates on the open market. *See* Exhibit 2 at ¶¶ 8-9; Exhibit 3 at ¶¶ 12-14; Exhibit 4 at ¶¶ 14-16.

In a review of a motion for fees, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993), *citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984) (internal quotation marks omitted). "The best evidence [of market rates] would be the hourly rate customarily charged by the affiant himself or by his law firm." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982).

"*In almost every case, the firm's established billing rates will provide fair compensation.*" *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24 (D.C. Cir. 1984), *overruled on other grounds by SOCM*, 857 F.2d 1516 (emphasis in original)[5]; *see also Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1254 (D.C. Cir. 2007) (using customary rates to establish reasonable rates); *Murray v. Weinberger*, 741 F.2d 1423, 1428 footnote 21 (D.C. Cir. 1984) (overturning district court for other reasons, but approving use of customary rate to determine market

---

[5] *SOCM* overruled the *Laffey* holding that an attorney who performed some public interest work at a reduced rate would only be compensated at that reduced rate, rather than the attorney's typical rate. *SOCM* did not criticize the general principle that an attorney's customary rate should be used to establish the market rate for services.

6

rate);  *Pawlak v. Greenawalt*, 713 F.2d 972, 979 (3d Cir.1983) ("[T]he value of an attorney's

services is generally measured by his billing rate." (citation omitted)), cert. denied, 464 U.S.

1042 (1984); *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277 (6th

Cir. 1983) ("The hourly rate charged by an attorney for his or her services will normally reflect

the training, background, experience and skill of the individual attorney.") (internal quotation

omitted); *Flynn v. Dick Corp.*, 624 F. Supp. 2d 125, 131 (D.D.C. 2009) (quoting *Concerned

Veterans* and relying heavily on customary rates); *Wilcox v. Sisson*, No. 02-1455, 2006 WL

1443981, *2 (D.D.C. May 25, 2006) ("The rates charged by counsel for the winning party are

presumptively reasonable if they are the same rates that counsel customarily charge other fee-

paying clients for similar work."); *Allen v. Utley*, 129 F.R.D. 1, 7 (D.D.C. 1990) ("when an

attorney has a customary billing rate, that rate is the presumptively reasonable rate to be used in

computing a fee award").

  "[T]he most fundamental economic analysis indicates that, all things considered, the rate

that [a firm] charges its clients is the market rate. In an efficient market, the price that

competitors charge is driven down to the lowest price any competitor charges." *Adolph Coors

Co. v. Truck Ins. Exchange,* 383 F.Supp.2d 93, 98 (D.D.C. 2005); *Cobell v. Norton*, 231 F. Supp.

2d 295, 302-03 (D.D.C. 2002) ("'There is no better indication of what the market will bear than

what the lawyer in fact charges for his services and what his clients pay.'") (quoting *Griffin v.

Wash. Convention Ctr.*, 172 F. Supp. 2d 193, 197 (D.D.C. 2001)); *Serrano v. Chicken-Out Inc.*,

209 F. Supp. 3d 179, 197 (D.D.C. 2016) (applying LSI *Laffey* rates in part because they were

customary rates).

  This principle applies even where those rates significantly exceed rates in the *Laffey*

matrix. *See McKesson Corp. v. Islamic Republic of Iran*, 935 F. Supp. 2d 34, 40-41 (D.D.C.

2013) (awarding standard billing rates significantly exceeding *Laffey* rates); *Woodland v. Viacom Inc.*, 255 F.R.D. 278, 280-81 (D.D.C. 2008) (awarding rates exceeding *Laffey* rates and rates awarded by same judge in prior cases because opposing party offered nothing to indicate falsity of verified statement regarding customary rates).

Plaintiff's counsel customarily charges – and earns –hourly rates in accordance with the LSI *Laffey* Matrix. *See* Exhibit 2 at ¶¶ 8-9. As the attorney's customary rates, they are presumptively reasonable.

While paying clients pay those rates, DCPS has repeatedly settled fees with Plaintiff's attorney at those same rates or just under. *See* Exhibit 2 at ¶¶ 10, 26. Those settlements are further evidence of the market and of reasonableness. *See Concerned Veterans*, 675 F.2d at 1325 ("Recent fees awarded… through settlement to attorneys of comparable reputation and experience performing similar work are also useful guides in setting an appropriate rate.").

Lawyers, most importantly Plaintiff's attorney, earn the rates requested on the market, so the rates requested are in line with prevailing market rates. *See Wimbish v. D.C.*, 251 F. Supp. 3d 187, 191-192 (D.D.C. 2017) (finding prevailing rates based on the declarations in Exhibit 5, including from Plaintiff's attorney).

    **B.**    **The Rates Requested Conform to Matrices Reflecting Rates for Similar Services in the Community.**

"In order to demonstrate [prevailing community rates], plaintiffs may point to such evidence as an updated version of the *Laffey* matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Covington*, 57 F.3d at 1109; *see Laffey v. Northwest Airlines, Inc*., 572 F. Supp. 354, 371 (D.D.C. 1983) *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985); *see also Cumberland*, 857 F.2d at 1525 ("commend[ing]" the use of the *Laffey* matrix).

The Plaintiff here presents "an updated version of the *Laffey* matrix" in addition to the multiple declarations as evidence that the requested rates are in line with prevailing rates in the community. Exhibit 6.

The correct way to update the original *Laffey* matrix for inflation is to adjust it for changes in the legal services component of the Consumer Price Index, to create what is commonly known by the name "LSI *Laffey* matrix" and similar. This method, as opposed to those underlying other adjusted *Laffey* matrices, was developed by an expert economist. *See* Exhibit 7 (Dr. Kavanaugh declaration); *U.F. v. Dist. of Columbia*, CV 19-2164 (BAH), 2020 WL 4673418, at *6 (D.D.C. Aug. 12, 2020) ("Notably, declarations from Dr. Kavanaugh have twice served as key evidence in cases in which the D.C. Circuit upheld application of the LSI Laffey Matrix.").

"The LSI-adjusted matrix is probably a conservative estimate of the actual cost of legal services in this area." *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 65 (D.C. Cir. 2015) (internal quotations omitted); *see DL v. D.C.*, 924 F.3d 585, 591 (D.C. Cir. 2019) (endorsing that view); *Interfaith Community Organization v. Honeywell International, Inc.*, 426 F.3d 694, 708-710 (3d Cir. 2005) (upholding trial court's use LSI *Laffey* matrix); *Serrano*, 209 F. Supp. 3d at 197 (using LSI *Laffey* adjustment).

As explained in the verified statement, the Plaintiff's attorney's rates perfectly conform to the LSI *Laffey* matrix, and so meet the *Covington* standard. *See* Exhibit 2 at ¶ 8; *compare* Exhibit 1 *with* Exhibit 6.

### C. The LSI *Laffey* Matrix is an Appropriate Measure of Prevailing Rates in the Community for Similar Services.

In the past, the judges of the District Court split regarding the applicability of the *Laffey* matrix to IDEA litigation, and the Court of Appeals repeatedly declined to definitively resolve

that split. *See Eley v. D.C.,* 793 F.3d 97, 101 (D.C. Cir. 2015) (declining to decide "whether IDEA litigation is in fact sufficiently 'complex' to use either version of the *Laffey* Matrix"); *DL*, 924 F.3d at 594 (D.C. Cir. 2019) (rejecting claim that the court had categorically "held that attorneys in IDEA cases should not be compensated at *Laffey* rates"); *but see Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring) ("I would simply add that, in my view, the United States Attorney's Office [update of the] *Laffey* matrix is appropriate for IDEA cases."); *Reed v. D.C.* 843 F.3d 517, 527-28 (D.C. Cir. 2016) (Tatel, J., concurring) ("I think it quite obvious that IDEA litigation is as complex as Title VII litigation.").

In the last nineteen months, multiple judges have awarded full LSI *Laffey* matrix rates when requested by the plaintiffs. *See U.F. v. Dist. of Columbia*, CV 19-2164 (BAH), 2020 WL 4673418, at *9 (D.D.C. Aug. 12, 2020); *B.J. v. Dist. of Columbia*, 19-CV-2163-TSC-ZMF, 2020 WL 8512639, at *3–4 (D.D.C. Nov. 9, 2020), *report and recommendation adopted*, 19-CV-2163-TSC-ZMF, 2021 WL 5992052 (D.D.C. Feb. 10, 2021) (noting "[t]he prevailing application of LSI Laffey Matrix rates" as the "Plaintiff [] Justified the Reasonableness of the LSI Laffey Matrix"); *M.G. v. Dist. of Columbia*, 15-CV-2239-KBJ-ZMF, 2021 WL 3507772, at *4 (D.D.C. Aug. 9, 2021) (later adopted by court in as-yet unpublished decision) ( "Plaintiff provides ample evidence that LSI Laffey rates are reasonable for the litigation in this case[.]"). As it happens, all three of these decisions were based on submissions nearly identical to those in this case.[6] *See id.*

As reviewed below, there are multiple reasons to conclude that IDEA litigation is at least as complex as other litigation in which *Laffey* rates have been applied.

---

[6] In each decision, each court did instruct the plaintiff to adjust some of the rates slightly to account for the time at which the work was performed. That adjustment is not relevant here, as the Plaintiff's attorney was in the same experience class when all work was done.

1.  <u>Lawyers experienced in federal litigation know that IDEA litigation is complex.</u>

The Plaintiff has attached declarations from several lawyers explaining how and why

IDEA litigation is particularly complex. Exhibits 2, 8-12. These lawyers have experience in

IDEA litigation and in other areas of law, including areas in which the Court of Appeals and the

District Court have applied the *Laffey* matrix. They state that IDEA litigation, whether at the

administrative or federal court level, is at least as complex as the work in those other areas. *See*

Exhibits 2, 8-10. Specifically, they collectively state that IDEA work is at least as complex as,

among other things, Title VII employment discrimination work, Section 1983 civil rights

litigation, and Interstate Commerce Commission ("ICC") litigation, areas of law in which *Laffey*

has been applied. *Compare* Exhibit 2 (Title VII, § 1983), Exhibit 8 (Title VII), Exhibit 9 (Title

VII), Exhibit 10 (ICC), *with Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983) *aff'd in*

*part, rev'd in par*t, 746 F.2d 4 (D.C. Cir. 1984) (Title VII); *Covington v. D.C.*, 57 F.3d 1101,

1103 (D.C. Cir. 1995) (Section 1983); *Wilkett v. I.C.C.,* 844 F.2d 867, 870 (D.C. Cir. 1988)

(challenge to ICC decision); *Salazar v. D.C.*, 123 F. Supp. 2d 8, 15 (D.D.C. 2000) (§ 1983);

*Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) (§ 1983).

It is no wonder that Judge Tatel, concurring in *Reed* before writing the *DL* opinion, said,

"I think it quite obvious that IDEA litigation is as complex as Title VII litigation." 843 F.3d at

527-28. In holding that the plaintiff had established the complexity of IDEA litigation,

Magistrate Judge Faruqui credited statements almost identical to those attached to this Motion.

*See M.G.*, 2021 WL 3507772 at *4 (later adopted by court in as-yet unpublished decision). Judge

A.B. Jackson recently reviewed several similar statements and also found that IDEA litigation

was sufficiently complex to warrant matrix rates. *Merrick v. D.C.*, 316 F. Supp. 3d 498, 510-11

(D.D.C. 2018). Judge Jackson quoted some of the points from the statements submitted in that

case that she found persuasive, but the Plaintiff has attached the statements – some of which overlap with her own exhibits – hereto for the Court's fresh review. Exhibit 5.

As attested to in the declarations and reviewed in *Merrick*, the complexity of IDEA litigation arises from several factors. *See* Exhibits 2, 8-11. Specialists must master – in addition to the IDEA statute, federal regulations, state regulations, related state statutes, administrative procedures, and caselaw – a huge amount of non-legal knowledge. *See id.*

This knowledge relates to education, including education policies, procedures, techniques, best practices, records, and administration, and also specialized disciplines pertinent to disabilities, like psychology, speech and language pathology, occupational therapy, physical therapy, and medicine. *See id.* IDEA litigators must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with their own experts. *See id.* Often IDEA attorneys must themselves serve as experts. *See id.*

This court has repeatedly acknowledged the complexity of IDEA litigation arising from this requirement of specialized knowledge.

> It is also worth noting that in order to handle special education cases effectively, counsel must know far more than IDEA law in order to cope with the obstructive and delaying practices of DCPS. Sad to say, to be effective—i.e., to get services, education, and treatment for their young clients—it is essential that counsel understand the bureaucratic workings of that system, know competent and caring individuals in that system who can break logjams and obtain necessary evaluations, reports, and materials, and then assure provision of whatever FAPE is deemed appropriate. To accomplish this goal takes diligence, perseverance, persuasiveness, and negotiating and inter-personal skills—as well as the traditional legal skills expected of any competent lawyer.

*Cox v. Dist. of Columbia,* 754 F. Supp. 2d 66, 75 (D.D.C. 2010); *see Young  v. Dist. of Columbia*, 893 F. Supp. 2d 125, 131 (D.D.C. 2012) (IDEA administrative litigation "requires not only knowledge of law, procedure, and trial advocacy, but also an understanding of the educational needs of students and the services necessary to address a range of developmental,

emotional, and language-based disorders."); *Jackson v. Dist. of Columbia,* 696 F.Supp.2d 97,

102 (D.D.C. 2010) (quoting multiple cases citing complexity of IDEA litigation).

Looking only at the legal portion of IDEA work, the District often argues that that IDEA

administrative cases require little discovery and only moderate prehearing motions practice, but

in fact this makes them more complex for attorneys.[7]  *See* Exhibits 2, 8-11. Because of the

limited discovery, and the "moving target" nature of respondents, parent attorneys must prepare

for multiple theoretical defense cases to every case. *See id.* The absence of depositions and the

relative lack of pretrial filing allow respondents to present almost any kind of surprise testimony

and to use any document in any way, multiplying the complexity many times. *See id.* With all of

this in play, in the mind of a thoughtful parent attorney, she or he must turn each IDEA case into

several as the attorney prepares, and must then adjust the case many times on the fly during the

hearing process.

These complexities are present in administrative cases as well as in federal cases. *See*

Exhibits 2, 8-12. While federal work may usually require more research and writing, the

complications resulting from the lack of discovery are primarily an issue in the administrative

work. *See id.*

> 2. Competent lawyers without IDEA experience have difficulty with IDEA litigation.

To test the complexity of IDEA litigation, one could take well-regarded, competent

lawyers without an expertise in IDEA litigation, assign them to litigate IDEA cases, and see how

difficult they find it to adjust. The results of two such tests can be found in the fees litigation in

---

[7] It is also worth noting that while discovery, particularly document production, can be the most cumbersome and annoying part of litigation, it does not make litigation more "complex" in any way that would suggest a higher hourly rate. To the contrary, it is the universal practice of larger firms to assign the least experienced lawyers to document production, and often to hire temporary lawyers to assist.

*G.H. v. D.C.* and the case of A.J., which was litigated in part under the *Blackman* class action. *See* No. CIV.A. 12-1638 BAH, 2013 WL 5297203 (D.D.C. Aug. 16, 2013) (*G.H.*); *Blackman v. D.C.*, 56 F. Supp. 3d 19 (D.D.C. 2014) (*A.J.*). *G.H.* was litigated by Patton Boggs, LLP; *A.J.* was litigated by Crowell & Moring and Steptoe & Johnson, in addition to the Judge David L. Bazelon Center for Mental Health Law. *See* 2013 WL 5297203; 56 F. Supp. 3d at 24.

Those law firms, while very well regarded, are not known for any expertise in IDEA litigation. Interestingly, while the Bazelon Center has been heavily involved in IDEA federal litigation, notably *Blackman* itself, it is not known for its experience with individual IDEA cases at the administrative level.

The work and billing histories in those case, especially as compared to the billing in this case, put the complexity of IDEA litigation in a dramatic light. However competent they may be in general, lawyers who are not experts in the field apparently find IDEA litigation challenging.

For the administrative litigation alone, the attorneys in *G.H.* and *A.J.* billed 879.5 hours and 790.4 hours respectively, almost ten times what Plaintiff's counsel spent on her administrative case. *See* No. CIV.A. 12-1638 BAH, ECF 3; No. CIV.A. 97-1629 PLF, ECF 2407, 2433, 2460; Exhibit 1. A closer look at the billing illuminates some telling differences. The *A.J.* attorneys spent 150.2 hours on legal research for that one case.[8] *See id.* In the case at bar the Plaintiff's expert attorney, well versed in the various statutes, regulations, caselaw, and other sources, spent only 12.5 hours on legal research for this case.[9] *See id.* The *G.H.* attorneys spent

---

[8] In the cases of entries in which legal research was one of multiple tasks, counsel attempted to fairly distribute the time to different tasks.
[9] In the cases of entries in which legal research was one of multiple tasks, counsel attempted to fairly distribute the time to different tasks.

64.75 hours on legal research, and that was without any substantive federal legal work, as was present in the case at bar.[10] *See id.*

The *G.H.* and *A.J.* attorneys spent 25.5 hours and 24 hours, respectively, consulting with experts in special education disciplines, independent of time spent in testimony preparation. *See id.* The Plaintiff's attorney, already an expert himself, spent no time at all consulting with experts independent of testimony preparation, exactly as suggested in the declarations discussing the complexities of IDEA litigation. *See id.*; Exhibit 2, 8-12.

One might think that those otherwise competent lawyers spent many times as many hours to litigate those cases because the issues were atypically complex, but that is not the case. In A.J.'s case, the only issue was wrongful expulsion. *See Blackman v. D.C.*, 56 F. Supp. 3d 19, 22 (D.D.C. 2014). In *G.H.*, the plaintiff had alleged an inappropriate IEP, the failure to implement the IEP, and a denial of parental participation, common claims. *See* 2013 WL 5297203. There is no reason to think that the *G.H.* and *A.J.* litigation would take several times the work.

If the Plaintiff's attorney can litigate her case in a small fraction of the time the cases took these other lawyers, one must conclude one of two things: 1) the Plaintiff's attorney is enormously more competent that those other lawyers in general, which counsel does not for a moment suggest, or 2) IDEA litigation is so complex that even very competent lawyers find it very challenging if they have not acquired an expertise.

As shown above, it appears that, in the complex and specialized area of IDEA litigation, the Plaintiff's more efficient attorney is in fact worth far more per hour than other lawyers. *See Merrick v. D.C.*, 316 F. Supp. 3d 498, 511 (D.D.C. 2018) ("[B]ecause an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing

---

[10] In the cases of entries in which legal research was one of multiple tasks, counsel attempted to fairly distribute the time to different tasks.

the USAO *Laffey* rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice.").

     **D.**    **Lower Rates Such as Those Often Proposed by the District Are Insufficient to Attract Competent Counsel.**

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation." *Perdue v. Kenny A.,* 559 U.S. 542, 552 (2010). Rates lower than those requested by the Plaintiff, such as the 75% matrix rates sometimes proposed by the District, do not induce capable attorneys to represent indigent clients with good cases.

The District has already litigated and lost the question of whether its proposed rates are sufficient to attract and retain counsel. Evidence submitted in an earlier case, which evidence the District did not rebut, established that DCPS's proposed hourly rates and payment practices have resulted in the devastation of the parent attorneys' bar.

In *Thomas v. D.C.*, the court reviewed the "disgraceful state of affairs" regarding the "acute financial challenges currently faced by special education lawyers in the District of Columbia." 908 F. Supp. 2d 233, 245-46 (D.D.C. 2012). These circumstances are "due to the District's practices regarding the payment of attorney's fees in IDEIA cases," specifically the District "habitually avoid[ing] paying attorney's fees to victorious counsel at all costs." *Id.*

The court's findings were based on multiple sworn statements. *See id.* The District had offered no evidence to rebut the plaintiff's evidence. *See id.* (quoting District as stating that the allegations were "not worthy of a response").

The court made those findings in *Thomas* "for two reasons."

First, the plaintiff's evidence reveals that the R & R's well-intentioned and logical assumptions about the benefits of endorsing a lower, but uniform, hourly rate for IDEIA cases, unfortunately do not reflect reality in this jurisdiction. ***

16

> Additionally, the District's apparent behavior highlights the well-established principle that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious ... case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010)….[T]he Court finds the plaintiff's evidence not only troubling but relevant to the fee inquiry in this case because the District's consistently dismal track record compels the conclusion that higher fees may need to be awarded in IDEIA cases in order to ensure that competent counsel continues to be attracted to IDEIA litigation.

*Thomas*, 908 F. Supp. 2d at 246. For convenience, the Plaintiff has attached hereto copies of two of the exhibits submitted in *Thomas*.[11] Exhibits 13-14.

To the evidence submitted in *Thomas*, the Plaintiff has added several other statements establishing that law firms cannot reasonably function under DCPS's proposed hourly rates – approximately equal to 75% of USAO matrix rates – and their payment practices. *See* Exhibits 2, 8-9, 11-12. The combination of the District's use of a 75% rate and its insistence on litigating fees has been driving old parent attorneys out of business and warding new ones away. *See id.; Jones v. D.C.*, No. 15-CV-01505 (BAH), 2019 WL 652349, at *13 (D.D.C. Feb. 15, 2019) (rates lower than USAO matrix rates insufficient to attract counsel).

DCPS's own statistics evince the devastation it has wrought on the class of lawyers representing poor children and the degree to which the District has effectively suppressed litigation to enforce parental rights. In 2007-2008, before the District began refusing to settle cases and began arguing for 75% rates, parent attorneys filed 3,261 administrative complaints for parents and students; in 2019-2020, they filed only 268. *See* http://www2.ed.gov/programs/osepidea/618-data/state-level-data-files/index.html (Part B, Dispute Resolution). Early on, the *Blackman-Jones* class action Monitor warned of the possible impact of DCPS's new practices on students, and in the years since those students have felt that

---

[11] The Plaintiff does not attach the third exhibit, another declaration, because it is already substantially duplicated in Exhibit 2.

blow. *See Blackman v. District of Columbia*, No. CIV.A. 97-1629 PLF, ECF 2428 at 32-38 (Monitor's report reviewing some changes in attorneys' fees and possible impact on students).

### E.      The Plaintiff's Attorney is an Expert in this Field.

As detailed in the declaration, the Plaintiff's attorney specializes in IDEA litigation in this jurisdiction. *See* Exhibit 2. He has specialized in IDEA litigation for many years. *See id.* The Plaintiff's attorney is extremely experienced, and is known and respected in this field in this jurisdiction. *See id.*

### F.      The Court Should Award Current Hourly Rates.

When awarding fees under a federal fee-shifting statute, courts should make "an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise." *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *see Copeland v. Marshall*, 641 F.2d 880, 893 n.23 (D.C. Cir 1980) (*en banc*) (hourly rate may be "based on present hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered," to reduce or eliminate "harm resulting from delay in payment"); *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C. Cir. 1984) ("Using current market rates to calculate the lodestar figure may counterbalance the delay in payment as well as simplify the task of the district court.");  *DL v. D.C.*, 267 F. Supp. 3d 55, 73 (D.D.C. 2017), *vacated and remanded on other grounds*, 924 F.3d 585 (D.C. Cir. 2019) (in IDEA case, "the process for compensating such a delay has been set out by the Supreme Court in *Jenkins*); *Thomas*, 908 F. Supp. 2d at 248-49 (applying *Jenkins* and *Copeland* to IDEA case); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 155 (D.D.C. 2012) (same).

**V.     THIS COURT SHOULD AWARD COMPENSATION FOR REASONABLE
LITIGATION EXPENSES**

The expenses itemized are of types consistently found to be reasonable. *See* Exhibit 2 at ¶

13; *Daniels v. D.C.*, No. CV 14-665 DAR, 2017 WL 1154948, at *4 (D.D.C. Mar. 27, 2017).

The expenses should be fully reimbursed.

**CONCLUSION**

The Plaintiff is a prevailing party as defined by the IDEA and is therefore entitled to an

award of reasonable attorneys' fees and costs. Because the Plaintiff's requested fees and costs

are reasonable and reasonably incurred in the course of the litigation, the Court should award

fees and costs in accordance with the time records and supporting statements.

Because of the District's long history of ignoring the timelines in orders for payment of

IDEA attorneys' fees, *see Thomas,* 908 F. Supp. 2d at 245-46, the Court should also order that

the District pay an additional $2,000.00 for each delay of a month or part thereof in payment. *See*

*Cook v. D.C.*, 115 F. Supp. 3d 98, 107 (D.D.C. 2015) (awarding post-judgment interest in

advance of possible future payment delay); *see U.F.*, 2020 WL 4673418 at *9 (holding that "the

District's poor payment track record calls for imposition of post-judgment interest" from date of

judgment instead of requested flat monthly charge for delay).

.

Respectfully submitted,

/s/ Douglas Tyrka
Douglas Tyrka, #467500
Tyrka & Associates, LLC
7322 Churchill Rd.
McLean, VA  22101
(ph) (202) 332-0038
(f) (202) 332-0039
tyrka@tyrkalaw.com