IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BARBARA JOAQUIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 21-cv-1845 (RCL) |
| ) | |
| DISTRICT OF COLUMBIA ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF CHARLES MORAN, ESQ.

Charles Moran declares and states as follows:

1. I am over 18 years of age and competent to testify concerning the matters contained herein. All statements in this declaration are made upon my personal knowledge or are derived from records I maintain in the ordinary course of my business.

2. I earned a Juris Doctor degree from Duke University Law School in 1967. I was admitted to practice law in the District of Columbia in 1968.

3. I am a member of this Court's bar and the U.S. Court of Appeals in the District of Columbia.

4. I have been practicing in the field of special education law for approximately 30 years. My practice focuses primarily on special education law, especially matters brought under the Individuals with Disabilities Education Act, 20 U.S.C. §1400 *et seq.* ("IDEA"). Some of my noteworthy cases include: *Blackman v. District of Columbia*, 185 F.R.D. 4 (D.D.C. 1999) (one decision in the much larger Blackman-Jones class action); *Price v. District of Columbia*, 792 F.3d 112 (D.C. Cir. 2015); *K.P. v. District of Columbia*, 690 Fed. App'x. 10 (D.C. Cir. 2017); *Olu-Cole v. E.L. Haynes Public Charter School*, 930 F.3d 519 (D.C. Cir. 2019).

5. I have served as a member of the District of Columbia Superior Court Family Division panel of attorneys approved to accept special education attorney appointments.

6. I own and operate Moran & Associates and currently supervise two associate attorneys.

1

7. Notwithstanding the District's recent reports that the total number of special education due process complaints filed annually against the District of Columbia Public Schools ("DCPS") has substantially decreased (as argued in its successful September 19, 2014 motion to terminate the consent decree in *Mikeisha Blackman, et al. v. Government of the District of Columbia*), the District's special education system remains one of the worst in the country. In its 2015 annual review, the Department of Education yet again found the District "needs intervention" and set conditions on continued funding due to its habitual non-compliance with the IDEA. A copy of the Department of Education's June 30, 2015 letter accompanies this declaration.  Additionally, the National Research Council found in a June 2015 report "that D.C. is among the worst school systems in the nation in providing appropriate educational opportunities for students with disabilities and that it has the worst record of any state in the country for meeting federal special education goals." National Research Council, An Evaluation of the Public Schools of the District of Columbia: Reform in a Changing Landscape (June 3, 2015) at 5-9, available at: http://www.nap.edu/catalog.php?record_id=21743.

8. For nearly 20 years, the District's preferred method of addressing its poor special education system has been to make it financially difficult for parents to pursue their rights and the rights of their disabled children, by making it financially prohibitive for them to retain the legal counsel they need to vindicate those rights. Instead of resolving most matters quickly and efficiently, DCPS typically employs delaying tactics, conditions settlement offers (when it settles) upon acceptance of extremely modest fee reimbursements that do not begin to compensate for the effort it took to achieve the results. DCPS settlement offers in IDEA cases are often so low that judges have ridiculed them as being "insincere" or "irrational." *See, e.g., Brighthaupt v. District of Columbia*, 36 F. Supp. 3d 1 (D.D.C. 2014) and *Queen-Brown v. District of Columbia*, Civil Action No. 14-2001 (ABJ/AK) (D.D.C.).

9. As a result, parents are usually forced to pursue their and their children's special education rights through due process hearings, and then to sue for their legal fees as prevailing parties.

It can take years to fully resolve a matter. During this time, paying clients must advance enormous sums of money to pay their legal fees; the lawyers who take these matters on a contingent fee basis must carry large receivables for years while still meeting their ongoing business and personal expenses. In either case, it is tempting (and sometimes financially compelling) to give up, which is the District's goal.

10. In litigation itself, DCPS protracts administrative hearings before the Office of Dispute Resolution of the Office of the State Superintendent with numerous, often conflicting motions (such as arguing mootness and ripeness in the same motion to dismiss).

11. Ironically, at the end of the litigation, when successful special education plaintiffs sue for reimbursement of their legal fees, they are met with the District's argument that the lawyers who bring them are unworthy of the fees they charge.

12. My firm has always set its rates with reference to a *Laffey* matrix. After the Circuit's decision in *D.L.*, my firm has set its rates at those provided in the Legal Services Index *Laffey* matrix ("LSI *Laffey*").

13. The decision to bill at updated *Laffey* rates is driven by several factors including (1) recognition that IDEA cases require great skill and tenacity, in addition to thorough knowledge of an evolving body of law and (2) the extremely adversarial nature of our most frequent special education opponent, and (3) the District's conditioning all settlement offers at the administrative level on the acceptance of a nominal sum for all work performed in the case. As a result of the District's litigation strategy and offer of minimal settlement offers for fees, our clients would refuse to accept those offers and chose instead to proceed to a second round of litigation in the same case.

14. My current hourly rate is $919 per hour. This rate is based upon the LSI-based *Laffey* matrix as set forth in *Salazar v. District of Columbia.*

15. My practice is primarily focused on children's rights litigation, usually under the IDEA. As a result, I read all District of Columbia IDEA fee cases, and many from other jurisdictions as well. I am therefore familiar with the range of fees that are awarded for IDEA work for lawyers of varying experience, in all types of cases, from single-issue

Mot. for Fees Ex. 3, p. 3

matters to highly complex cases involving seriously disabled children and/or multiple legal questions. By following IDEA fee matters, I can attest that my firm's rates and charges are at or below those customarily billed in this District for IDEA litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: January 13, 2022

_____
Charles A. Moran, Esq.