THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

## VERIFIED STATEMENT OF ALANA HECHT

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am the sole attorney employed by my firm, D.C. Disability Law Group, P.C ("DCDLG").

3. All of my current legal work is in the field of IDEA law in the District of Columbia, representing parents. I have litigated at least 200 IDEA cases since 2010 when I entered the field.

4. In addition to my work as a special education lawyer, I have also worked in employment discrimination litigation under Title VII. I have found legal work under the IDEA to be far more complex as the work in those other areas of law. This complexity results from several factors.

5. Every IDEA case requires specialized non-legal knowledge regarding special education. Every case requires knowledge of education policies, procedures, techniques, best practices, records, and administration. Almost every case requires knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine, and others. A competent IDEA litigator must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with one's own experts. Moreover, because school districts use their regular staff as experts but parents' expert witness fees are not reimbursable, IDEA litigators must often rely on their own knowledge instead of that of experts.

6. There is very limited discovery and pretrial exchange between the parties in IDEA cases, but that usually makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses. Before the start of an IDEA hearing, and often well into a hearing, I have little idea what positions the

1

respondent will take beyond "Respondent did not deny FAPE." For that same time, I often have little idea upon what documents the respondent will rely and for what purpose, because even though those the documents must be disclosed, there is no advance knowledge of what portions of what documents the respondent will emphasize, from a file possibly hundreds or thousands of pages thick. Similarly, though the respondent may disclose five to twenty potential witnesses, because hearing officers almost never require any warning of witnesses testimony, I have no idea until the close of the parent's case which witnesses will appear or what each witness – including expert witnesses – will say. For these reasons, in a typical case and usually even in a simple case, I must prepare for very many potential defense cases presented by the respondent.

7. I have worked on both administrative and federal court IDEA cases. In my experience the administrative work is generally at least as complex as the federal work. The work in both venues involves the same legal questions. The federal work requires much more writing, and often more research as a result. But because at the administrative level the legal issues are rarely well defined until closing argument, at the administrative level one usually needs much more legal preparation and a much better general IDEA familiarity than is required at the federal level. Similarly, because there is no discovery at the administrative level, one often does not know what the key evidence, including testimony, is until well into the hearing, so one must be very familiar with every existing document and must prepare for a broad range of "surprise" testimony, including possible testimony from a diverse range of experts.

8. I have entered into hourly rate retainers with many clients, for IDEA work and for other work. I have always set my hourly rate at the outset of the relationship. I have never changed my hourly rate based on the expected complexity of a case. I have not done that because the total

cost of more complex litigation is already captured by the greater number of hours spent on more complex cases and because it is often difficult to judge the complexity of a case at the outset.

9. I currently have only non-paying IDEA clients. That is, my only expectation of payment is from court awards pursuant to the IDEA's fee-shifting provision. I have found it very difficult to maintain my practice, and impossible to help everyone who has sought my help.

10. In 2012 when I began my practice, I had both an educational advocate/ expert and a paralegal at my firm.  I have been unable to maintain having additional help at the firm.  In 2015, I had to lay off my only paralegal.  In 2020, I had to part ways with the educational advocate that had been part of the firm from its inception because I was unable to afford to pay her.

11. At multiple points in the last five years, the firm's bank balance dropped below $5,000, and I have often had to do without any pay myself and borrow money from family.

12. I have turned away many potential clients who have sought my help during the last five years, solely because the firm cannot afford to maintain any staff to assist me.

13. Though I am typically awarded at least $300 per hour for my IDEA work, my fees are insufficient to maintain my firm in a reasonable manner for many reasons, including the following: the necessity of litigation for fees; the chance of losing the cases and obtaining no fee; the inability to recover fees for unsuccessful claims and theories; the inability to recover fees for many hours of necessary work, including work in attending necessary meetings; judges often cutting time entries for various reasons; the inability to recover expert witness costs; the very long wait for fees through litigation; and the general inconsistency of income earned through litigation.

14. If all judges, instead of only some, were to award the hourly rate for my work proposed by the District, 75% of the United States Attorney's Office version of the "Laffey matrix," I may have to consider leaving my current practice and either work only for paying clients or find entirely different work.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 22, 2021

Alana M. Hecht, Esq.
Bar No. 494097