## VERIFIED STATEMENT OF CHARLES MORAN

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am a partner of Moran and Associates, a law firm specializing in litigation under the Individuals with Disabilities Education Act on behalf of the parents of special needs children in the District of Columbia.

3. More than seventy-five percent of our current work involves children with disabilities.

4. I have litigated approximately more than 500 IDEA cases. I was the attorney who brought a case that subsequently became the *Blackman/Jones* class action. For many years I was one of three co-counsel for the class.

5. In addition to my work as a special education lawyer, I have worked in administrative litigation before various federal regulatory agencies, primarily the Interstate Commerce Commission. I have found legal work under the IDEA to be as complex as the work involving the ICC. This complexity results from several factors.

6. Every IDEA case requires specialized non-legal knowledge regarding special education. Every case requires knowledge of education policies, procedures, techniques, best practices, records, and administration. Almost every case requires knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine, and others. A competent IDEA litigator must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with one's own experts. Moreover, because school districts use their regular staff as experts but parents' expert witness fees are not reimbursable under IDEA, litigators must often rely on their own knowledge instead of that of experts.

1

7.      There is very limited discovery and pretrial exchange between the parties in IDEA cases, but that usually makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses. Before the start of an IDEA hearing, and often well into a hearing, I have little idea what positions the respondent will take beyond "Respondent did not deny FAPE." For that same time, I often have little idea upon what documents the respondent will rely and for what purpose, because even though those the documents must be disclosed, there is no advance knowledge of what portions of what documents the respondent will emphasize, from a file possibly hundreds or thousands of pages thick. Similarly, though the respondent may disclose five to twenty potential witnesses, because hearing officers almost never require any warning of witnesses testimony, I have no idea until the close of the parent's case which witnesses will appear or what each witness – including expert witnesses – will say. For these reasons, in a typical case and usually even in a simple case, I must prepare for very many potential defense cases presented by the respondent.

8.      I have worked on both administrative and federal court IDEA cases. The work in both venues involves the same legal questions. The federal court work requires much more writing, and often more research as a result. Much more precision is required in court, but at the administrative level the legal issues are rarely well defined until closing argument, because limited disclosure allows shifting positions. At the administrative level one usually needs much more legal preparation and a much broader and more general IDEA familiarity than is required at the court level. Similarly, because there is no meaningful discovery at the administrative level, one often does not know what the key evidence, including testimony, is until well into the hearing, so one must be very familiar with every existing document and must prepare for a broad range of "surprise" testimony, including possible testimony from a diverse range of experts.

9. I have entered into hourly rate retainers with many clients, for IDEA work and for other work. I have always set my hourly rate at the outset of the relationship. I have never changed my hourly rate based on the expected complexity of a case. I have not done that because the total cost of more complex litigation is already captured by the greater number of hours spent on more complex cases and because it is often difficult to judge the complexity of a case at the outset.

10. Prior to January 1, 2014, Moran and Associates set its rates to match those in the updated *Laffey* matrix maintained by the United States Attorney's Office for the District of Columbia. That rate had been sufficient because the District of Columbia Public Schools ("DCPS") had historically paid reasonable attorneys' fees out of court. By January 1, 2014, DCPS had discontinued that practice, thereby requiring Moran and Associates to litigate for fees in order to survive. These circumstances greatly increased the costs of litigation and heightened the risk involved in litigating cases under the IDEA, so the firm was forced to adjust its rates in response.

11. On January 1, 2014, Moran and Associates adjusted its rates to match those in the version of the *Laffey* matrix sometimes referred to as the "LSI *Laffey* matrix" or the "*Salazar Laffey* matrix," as opposed to what is commonly referred to as the "USAO *Laffey* matrix" or similar. Since January 1, 2014, the firm has billed at those rates unless limited to a different rate according to a D.C. Superior Court appointment order. The exceptions to this billing rate is for cases where there is an hourly rate or aggregate fee cap set by statute.

12. These rates are regularly paid by clients who retain the firm to litigate cases on a non-contingency basis.

13. Based on my experience with IDEA litigation and IDEA fee litigation, my close observation of IDEA fee litigation, and my knowledge of many IDEA litigators, I do not think that a law firm, including mine, can survive if a large portion of its work is for non-paying clients

3

and the firm is awarded fees equaling 75% of the USAO version of the *Laffey* matrix. Such fee awards are too little to keep a firm in business, for multiple reasons, including the following: the District's refusal to negotiate fees in good faith and at a reasonable rate; the necessity of litigation for fees; the chance of losing the cases and obtaining no fee; the inability to recover fees for unsuccessful claims and theories; the inability to recover fees for many hours of necessary work, including work in attending necessary meetings; judges' practice cutting time entries for various reasons; the inability to recover expert witness costs; the very long wait for fees through litigation; and the general inconsistency and insecurity of income earned in that way.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 8/13/2015

_____
Charles Moran