## VERIFIED STATEMENT OF MARIA G. MENDOZA

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. Over the course of my career, I have litigated approximately 200 Individuals with Disabilities Education Act ("IDEA") cases in the District of Columbia.

3. In addition to my work as a special education lawyer, I have also worked in other areas of law. I began my career as a judicial law clerk for the D.C. Court of Appeals before entering into private practice, where I represented government agencies in federal grant management and regulatory compliance matters. I also was a staff attorney at a local non-profit, where I represented some of the District's most vulnerable members in housing litigation matters. My practice currently focuses on advising developers and property owners on Tenant Opportunity to Purchase Act ("TOPA") matters, and I only accept cases where I am paid a retainer up front.

4. IDEA cases are complex. Every IDEA case requires specialized non-legal knowledge regarding special education. Every case requires knowledge of education policies, procedures, techniques, best practices, records, and administration. Almost every case requires knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, and medicine, and others. A competent IDEA litigator must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with one's own experts. Moreover, because school districts use their regular staff as experts but parents' expert witness fees are not reimbursable, IDEA litigators must often rely on their own knowledge instead of that of experts.

5. There is very limited discovery and pretrial exchange between the parties in IDEA cases, but that usually makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses. Before the

start of an IDEA hearing, and often well into a hearing, I have little idea what positions the respondent will take beyond "Respondent did not deny FAPE." For that same time, I often have little idea upon what documents the respondent will rely and for what purpose, because even though those the documents must be disclosed, there is no advance knowledge of what portions of what documents the respondent will emphasize, from a file possibly hundreds or thousands of pages thick. Similarly, though the respondent may disclose five to twenty potential witnesses, because hearing officers almost never require any warning of witnesses testimony, I have no idea until the close of the parent's case which witnesses will appear or what each witness – including expert witnesses – will say. For these reasons, in a typical case and usually even in a simple case, I must prepare for very many potential defense cases presented by the respondent.

6. I have worked on both administrative and federal court IDEA cases. In my experience the administrative work is at least as complex as the federal work. The work in both venues involves the same legal questions. The federal work requires much more writing, and often more research as a result. But because at the administrative level the legal issues are rarely well defined until closing argument, at the administrative level one usually needs much more legal preparation and a much better general IDEA familiarity than is required at the federal level. Similarly, because there is no discovery at the administrative level, one often does not know what the key evidence, including testimony, is until well into the hearing, so one must be very familiar with every existing document and must prepare for a broad range of "surprise" testimony, including possible testimony from a diverse range of experts.

7. I have entered into hourly rate retainers with many clients, for IDEA work and for other work. I have always set my hourly rate at the outset of the relationship. I have never changed my hourly rate based on the expected complexity of a case. I have not done that because the total

cost of more complex litigation is already captured by the greater number of hours spent on more complex cases and because it is often difficult to judge the complexity of a case at the outset.

8. In June 2014, I formed a small law firm, Aziz Jewell & Mendoza, as a named partner, with the intent to work chiefly in IDEA litigation.

9. From June 2014 until approximately March 2015, my practice heavily focused on IDEA matters, but I have since stopped taking IDEA cases because most persons with IDEA claims cannot afford to pay my legal fees and most IDEA cases require lawyers to accept cases only on the hope of a fee-shifting award, with a wait of years.

10. From June 2014, when I first started my own firm, until about March 2015, I represented about 35 non-paying clients in IDEA matters. That is, my only expectation of payment in those cases was from court awards pursuant to the IDEA's fee-shifting provision. I have almost completely discontinued that work because it was financially impossible. I have represented only about two clients in the last five months. I have turned away many potential clients who have sought my help during the last five months.

11. I have yet to receive any payment from the District for any of my IDEA work since June 2014. The District offered my clients settlements containing fee provisions in some cases, but the fees were for amounts I considered ridiculous, such as $300 or $500 for many hours of work. In some cases clients nonetheless accepted settlements, thus incurring responsibility for my fees, because the substance of the settlement was attractive enough and because the District openly accused me of being interested only in money.

12. From my experience and from my conversations with other lawyers, I believe that it is impossible to maintain a practice in which a large portion of the work is IDEA work for non-paying clients, at least not without a very large amount of capital from the outset. I believe it is

impossible for several reasons, including: the District's refusal to negotiate fees in good faith and at a reasonable rate; the necessity of litigation for fees; judges regularly awarding hourly rates of 75% of the rates in the United States Attorney's Office version of the "*Laffey* matrix;" the chance of losing the cases and obtaining no fee; the inability to recover fees for unsuccessful claims and theories; the inability to recover fees for many hours of necessary work, including work in attending necessary meetings; the possibility of judges cutting time entries for various reasons; the inability to recover expert witness costs; the very long wait for fees through litigation; and the general inconsistency and insecurity of income earned in that way.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  8-12-2015                     _____
                                            Maria G. Mendoza