## VERIFIED STATEMENT OF DOMIENTO C.R. HILL

1. I am over 18 years of age and competent to testify regarding the matters described herein.

2. I am the sole owner of The Law Offices of Domiento C.R. Hill, LLC a law firm specializing in special education litigation on behalf of parents in the District of Columbia.

3. Approximately 50% percent of my current legal work is in the field of IDEA law in the District of Columbia, representing parents. From 2001 through 2020 more than 90% of my work consisted of that work. I have litigated more than 2,700 IDEA cases since 2001.

4. In addition to my work as a special education lawyer, I have also worked in various other areas of law, including class action defense, commercial litigation, personal injury, wrongful death, contract, and employment. I have found legal work under the IDEA to be as complex as any area of work that I have done. This complexity results from several factors.

5. Every IDEA case requires specialized non-legal knowledge regarding special education. Every case requires knowledge of education policies, procedures, techniques, best practices, records, and administration. Almost every case requires knowledge of specialized disciplines, including psychology, speech and language pathology, occupational therapy, physical therapy, medicine, and others. A competent IDEA litigator must know enough of those disciplines to understand and critique evaluations, cross-examine experts, and work with one's own experts. Moreover, because school districts use their regular staff as experts but parents' expert witness fees are not reimbursable, IDEA litigators must often rely on their own knowledge instead of that of experts.

6. There is very limited discovery and pretrial exchange between the parties in IDEA cases, but that usually makes the preparation and litigation of IDEA cases more complicated, especially because hearing officers typically allow respondents to spontaneously adjust defenses. Before the

start of an IDEA hearing, and often well into a hearing, I have little idea what positions the respondent will take beyond "Respondent did not deny FAPE." For that same time, I often have little idea upon what documents the respondent will rely and for what purpose, because even though those the documents must be disclosed, there is no advance knowledge of what portions of what documents the respondent will emphasize, from a file possibly hundreds or thousands of pages thick. Similarly, though the respondent may disclose five to twenty potential witnesses, because hearing officers almost never require any warning of witnesses testimony, I have no idea until the close of the parent's case which witnesses will appear or what each witness – including expert witnesses – will say. For these reasons, in a typical case and usually even in a simple case, I must prepare for very many potential defense cases presented by the respondent.

7.      I have worked on both administrative and federal court IDEA cases. In my experience the administrative work is generally at least as complex as the federal work. The work in both venues involves the same legal questions. The federal work requires much more writing, and often more research as a result. But because at the administrative level the legal issues are rarely well defined until closing argument, at the administrative level one usually needs much more legal preparation and a much better general IDEA familiarity than is required at the federal level. Similarly, because there is no discovery at the administrative level, one often does not know what the key evidence, including testimony, is until well into the hearing, so one must be very familiar with every existing document and must prepare for a broad range of "surprise" testimony, including possible testimony from a diverse range of experts.

8.      I have entered into hourly rate retainers with many clients, for IDEA work and for other work. I have always set my hourly rate at the outset of the relationship. I have never changed my hourly rate based on the expected complexity of a case. I have not done that because the total

cost of more complex litigation is already captured by the greater number of hours spent on more complex cases and because it is often difficult to judge the complexity of a case at the outset.

9. I have had my own firm since April of 2012. Through 2020, I dedicated myself almost exclusively to IDEA work for non-paying IDEA clients. That is, my only expectation of payment was from either an award provided by the court pursuant to the IDEA's fee-shifting provision, or on those rare occasions, a settlement negotiated with the District of Columbia Public Schools.

10. I found it impossible to maintain my practice in that way, and impossible to help everyone who sought my help. I have now restructured my practice such that less than 50% of my time is spent on IDEA work for non-paying IDEA clients, despite the availability of many more viable cases.

11. Despite the availability of more clients with viable cases than I could handle and my expertise in this field, my firm essentially existed on the brink of closure beginning only several months after I opened it. I often had to do without pay for myself, I was often forced to incur debt to keep the firm functioning, and eventually I was forced to lay off my very experienced and skilled "special education advocate."

12. I have turned away many potential clients who have sought my help since 2012, solely because the firm could not afford to maintain a fulltime staff to assist me.

13. My work for non-paying IDEA clients was insufficient to maintain my firm for many reasons, including the following: the necessity of litigation for fees; the chance of losing the cases and obtaining no fee; the inability to recover fees for unsuccessful claims and theories; the inability to recover fees for many hours of necessary work, including work in attending necessary meetings; judges often cutting time entries for various reasons; the inability to recover

expert witness costs; the very long wait for fees through litigation; and the general inconsistency of income earned through litigation.

14. Because of my firm's regular desperate circumstances, in an effort to speed fee recovery I restricted myself to requesting fees calculated with the hourly rate approved by DCPS, the "75% USAO" rate, a rate I consider unreasonably low and below market rates. At those rates, DCPS nonetheless refused to reasonably compensate me for my time. Instead, DCPS often offered me less than my full fee (at their rates), without explanation, thus forcing me to litigate for my fees going forward or to accept a negligible settlement amount.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 11/18/2021                           */s/ Domiento C.R. Hill*
                                                  Domiento Hill