**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

I, Daniel Ronald Sherman, declare as follows

1. I am an economist who lives in Alexandria, Virginia.  I received my bachelor's degree in economics from Rensselaer Polytechnic Institute and both my master's degree and doctorate degree in labor economics from Cornell University.   After graduation from Cornell in 1985, I served for three years as an economist at the Federal Trade Commission in Washington, DC.  I subsequently worked as an economist in several consulting firms, including Abt Associates, Barents Group (part of KPMG), and from 1999 onward, the American Institutes for Research, retiring there in 2018 as a Managing Director. As an economist in these positions, I both conducted economic studies using statistical methods such as regression analysis and supervised and reviewed work of others who used these methods.

2. At the request of Douglas Tyrka, I reviewed the declaration of Brian T. Fitzpatrick dated March 16, 2022 and filed in *J.T. v. District of Columbia,* Case 19-cv-989 in the United States District Court for the District of Columbia.  I also reviewed the simultaneously filed "matrix" created by Mr. Fitzpatrick presenting hourly rates over time for paralegals and attorneys with various levels of experience who were involved in complex civil cases in the District of Columbia.   To create the matrix, Mr. Fitzpatrick analyzed data he collected on paralegal and attorney fees from 2013 through 2020 as described in his declaration.

3. After reviewing the declaration and matrix that Mr. Fitzpatrick prepared, I completed a declaration that was executed on Jane 29, 2022 and submitted to the District Court.  In this declaration, I reviewed Mr. Fitzpatrick's methodology and the matrix of hourly rates for attorneys by years of experience for year from 2013 and 2020.  He additionally computed rates for paralegals, though his analysis did not incorporate information on paralegals' experience.  In preparing my declaration, I did not have access to underlying data Mr. Fitzpatrick used to compute rates for attorneys and paralegals.

4. The key findings of my earlier review were that:

    a. The regression analysis Mr. Fitzpatrick developed computed a formula that gives an estimate of hourly rates for attorneys by "plugging in" years of experience and the value of specific year for which rates are calculated.  The analysis for paralegals was similar, though no account was made for experience in computing rates.

    b. The regression analysis (and resulting matrix) developed by Mr. Fitzpatrick finds in a given calendar year, rates for attorneys increase with experience but gains for having more experience are smaller for more experienced attorneys.

   i. For example, in the year 2013, the matrix assigns an attorney with no experience (0 years) an hourly rate of $227.32 and an attorney with 1 year of experience an hourly rate of $243.64, an increase of $16.32. An attorney with two years of experience is assigned hourly rate of $259.52, a difference of $15.88.  Although rates increase with experience within a year, the gains are smaller with each additional year of experience.

     1. The numbers presented in these examples of gains to experience in a year differ slightly from those presented in paragraph 11 of my earlier declaration but do not affect my conclusions.

   ii. Gains for an extra year of experience in 2013 are less than $5 per hour for those with more than 25 years of experience on a base of more than $500 and less than $1.00 per hour for those with 35 years or more of experience and begin to decrease after 38 years of experience.

 c. Starting in 2013, the regression specification assumes that the rate for an attorney with a given level of experience increases by $27.98 from one year to the next. Attorneys with no years of experience in 2013 are assigned the rate of $227.32 per hour, $255.30 in 2014, and $283.27 in 2015, an increase of about about $28 per year each and every year going ahead.  This $28 annual increase applies to all levels of experience among attorneys through 2020, the last year covered by the data used in the regression analysis.

   i. Beyond 2020, Mr. Fitzpatrick applies a percentage increase to his 2020 rates to make adjustments; this increase is same for all levels of experience between adjacent years.

 d. The effect of assuming fixed annual dollar increase of all attorneys (here $28) serves to compress rates over time, as those attorneys with more experience will have lower gains (in percentage terms) over time than those with less experience.

   i. A numerical example of this compression can be seen by comparing ratio of rates for attorneys with the most experience to those with the least experience.  In 2013, this ratio was (from the matrix) $535/$227 or 2.36. In 2020, this ratio was $760/$440 or 1.73.

   ii. During the period covered by the data (2013 to 2020), the matrix shows that rates computed  for those attorneys with the most experience increased by 42 percent and those with least experience by 94 percent between 2013 and 2020.

 e. Although the paralegal estimates do not make adjustment for experience, they similarly assume that rates have increase by a fixed-dollar amount each year – $9.90 per year or a 7.7% increase between 2013 and 2014 and a 5.3% increase between 2019 and 2020.

5. At the time I prepared my earlier declaration, the data that Mr. Fitzpatrick used to create his matrix of rates were not available to me. Subsequently I was able to access the data at the following website: https://www.justice.gov/usao-dc/civil-division. Based on my review of these data, I was able to replicate Mr. Fitzpatrick's analysis and reproduce the matrix he had created. I would note the following in reviewing the data:

    a. Although the data cover 2013 through 2020, there were relatively few cases and attorney rates available for 2019 and 2020. In 2018, there were 20 cases with rates for 71 attorneys. In 2019, there were 11 cases and rates for 31 attorneys, and in 2020, there was one case with two attorneys.

    b. The sparseness of data for 2019 and 2020 indicates estimates of rates presented in the matrix primarily represent cases from 2013-2018, with relatively little input from later years.

    c. As noted above, estimates for 2021 and 2022 are developed by applying inflation adjustments to the 2020 estimates rather than applying a fixed dollar amount as had been done in previous years. To be consistent with the earlier approach, all rates for attorneys should have been increased by $28 between 2020 and 2021 and by the same amount between 2021 and 2022.

6. The use of inflation adjustments rather than applying fixed dollar increases in 2021 and 2022 is more consistent with the approach economists typically use to examine relationships between earnings and education or experience.

7. Mr. Fitzpatrick cites a well-known 1974 book by economist Jacob Mincer in paragraph 14 of his declaration as a basis for his regression approach, though he uses the rate variable "as is," rather than using the logarithm of the rate variable as typically is done in analyses of wages and schooling or experience, including those presented in the Mincer book. He does say that he tried the logarithm form of the rate measure but does not report the results in his declaration.

    a. Using the logarithm of rates would be more consistent with the Mincer approach and would have the interpretation of rates for a given level of experience increasing from one year to the next as a percentage increase rather than a fixed dollar amount. This type of increase would be similar to cost-of-living and other increases that are applied to wages and salaries as percentages rater than fixed dollar amounts.

    b. As noted, assuming that the rate for a given level of experience increases by a fixed dollar amount has the effect of raising rates more of less-experienced attorneys over time, given that their starting rates are lower.

    c. An approach that applied a fixed percentage increase to compute rates for the next year would not compress rates over time if applied to all attorneys each year   If,

    for example, attorneys with 20 years of experience had rates twice those of attorneys with 5 years of experience in one year, the rates for attorneys with this level of experience would still be twice as high the next year as long as all rates were increased by the same percentage. This would hold true even if different percentage adjustments (such as general inflation factors) were applied in each year as long as they were applied uniformly to all levels of experience within a year.

8. Now that I have been given access to Mr. Fitzpatrick's data, the comments in paragraph 19 of my June 29, 2022 declaration no longer apply. The remainder of comments in that declaration accurately represent my professional opinion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*Daniel R Sherman, PhD*

Executed on_____December 8, 2022_____          _____
                                                                  Daniel R. Sherman